# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

Ronald Laverne Halstead,

        Petitioner,

v.

Lionel Craig Apker, Jr.,

        Respondent.

CV 11-0225 TUC-FRZ (JM)

**REPORT AND RECOMMENDATION**

Pending before the Court is Petitioner Ronald Laverne Halstead's Petition for Writ of Habeas Corpus (Doc. 1) filed under 28 U.S.C. §2241. In accordance with the Rules of Practice of the United States District Court for the District of Arizona and 28 U.S.C. § 636(b)(1), this matter was referred to the Magistrate Judge for report and recommendation. As explained below, the Magistrate Judge recommends that the District Court, after an independent review of the record, deny and dismiss the Petition with prejudice.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Petitioner Ronald Laverne Halstead, a federal prisoner who is currently incarcerated at the Federal Prison Camp in Tucson, Arizona, is currently serving a 151 month sentence from the Northern District of West Virginia for Conspiracy to Commit Mail Fraud (18 U.S.C. § 371), Health Care Fraud (18 U.S.C. § 1347), and Conspiracy to Commit Money Laundering (18 U.S.C. § 1956). *Return and Answer*, Exhibit 1.

Prior to sentencing on August 28, 2006, and for a short time thereafter until Petitioner's self-surrender, Petitioner was subject to an Order Setting Conditions of Release

("Release Order") which was entered by District Judge Irene M. Keeley in the Northern District of West Virginia on June 4, 2004. *Petition*, pp. 14-16. In the Release Order, the court required Petitioner be subject to "Home Incarceration," which ultimately lasted approximately 28 months until his post-sentencing self-surrender on October 19, 2006. *Return and Answer,* Ex. 1, Attach. 2. Petitioner now seeks credit against his sentence for the time he spent under "Home Incarceration" prior to his self-surrender.

## II. LEGAL DISCUSSION

### A. Exhaustion of Administrative Remedies

Before petitioning the federal courts for credit for his "Home Incarceration," Petitioner must first exhaust his administrative remedies. *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir.2001), *overruled on other grounds by, Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). Respondent does not dispute, and the record reflects, that Petitioner did exhaust his administrative remedies prior to filing the instant action. *See Petition*, pp. 8-20.

### B. Merits

Under 18 U.S.C. § 3585, a defendant "shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences . . ." 18 U.S.C. § 3585(b). Petitioner argues that his pre-sentencing "Home Incarceration" constituted "official detention under § 3585 and that he is therefore entitled to credit against his sentence for that time. The Supreme Court addressed a similar argument in *Reno v. Koray*, 515 U.S. 50 (1995). In that case, a Federal Magistrate Judge entered a release order ordering respondent Koray released on bail pending sentencing and

ordered that he be "'confined to [the] premises' of a community treatment center without 'authoriz[ation] to leave for any reason unless accompanied' by a Government special agent." *Id*. at 52-53. After he was sentenced, Koray requested the Bureau of Prisons ("BOP" or "Bureau") credit toward his prison sentence the 150 days he spent at the community treatment center. *Id.* at 53. In rejecting Koray's argument, the Court found that the time spent in the community treatment did not constitute official detention under § 3585(b).

Petitioner attempts to distinguish the facts *Koray* from those he faced. In doing so, he argues that he was sentenced to "Home Incarceration," which he distinguishes from "Home Detention," which was a less restricted "confinement program" listed in the Release Order signed by Judge Kelley. *Petition,* Exhibits at p. 15. Petitioner's argument is superficially appealing as his release left him subject to "Home Incarceration," rather than mere "Home Detention." On "Home Incarceration," Petitioner's travel was limited to leaving his house for medical and religious reasons and for court appearances. *Id*. Had he been placed on "Home Detention," he additionally would have been permitted to leave for additional activities such as employment and educational reasons and attorney visits. *Id*. However, while the restrictions of "Home Incarceration" were more limiting that those imposed under "Home Detention," they have no impact on the evaluation of whether Petitioner was subject to "official detention" under § 3585(b).

As the Supreme Court explained in Koray:

> Unlike defendants "released" on bail, defendants who are "detained" or "sentenced" *always remain subject to the control of the Bureau*. See *Randall v. Whelan*, 938 F.2d 522, 525 (CA4 1991). This is an important distinction, as the identity of the

- 3 -

> custodian has both legal and practical significance. A defendant who is "released" is not in BOP's custody, and he cannot be summarily reassigned to a different place of confinement unless a judicial officer revokes his release, see 18 U.S.C. § 3148(b), or modifies the conditions of his release, see § 3142(c)(3). A defendant who is "detained," however, is completely subject to BOP's control. And "[t]hat single factor encompasses a wide variety of restrictions." *Randall*, *supra*, at 525. "Detained" defendants are subject to BOP's disciplinary procedures; they are subject to summary reassignment to any other penal or correctional facility within the system, cf. *Meachum v. Fano*, 427 U.S. 215, 224-229, 96 S.Ct. 2532, 2538-2541, 49 L.Ed.2d 451 (1976); and, being in the legal custody of BOP, the Bureau has full discretion to control many conditions of their confinement. See *Moody v. Daggett*, 429 U.S. 78, 88, n. 9, 97 S.Ct. 274, 279, n. 9, 50 L.Ed.2d 236 (1976); *Bell v. Wolfish*, 441 U.S. 520, 544-548, 99 S.Ct. 1861, 1876-1879, 60 L.Ed.2d 447 (1979).

*Koray*, 515 U.S. at 63.

The considerations outlined in *Koray* apply equally and as unfavorably to Petitioner here. While denominated "Home Incarceration," the conditions of his release did not allow for the BOP, without judicial intervention, to summarily reassign him to a different place of confinement. Moreover, he was not completely subject to BOP's control as he would be if under official detention. He was free to move about his house and do anything he wished without intervention from the authority of the BOP. As such, under *Koray*, Petitioner was not officially detained during his period of "Home Incarceration," and is not entitled to credit to his sentence for that period of time.

. . . .

. . . .

### III. <u>RECOMMENDATION</u>

Based on the foregoing, the Magistrate Judge **RECOMMENDS** that the District Court, after its independent review, **deny** Petitioner's Petition for Writ of Habeas Corpus (Doc. 1).

This Recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

However, the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the District Court. *See* 28 U.S.C. § 636(b)(1) and Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. If any objections are filed, this action should be designated case number: **CV 11-0225-TUC-FRZ**. Failure to timely file objections to any factual or legal determination of the Magistrate Judge may be considered a waiver of a party's right to *de novo* consideration of the issues. *See United States v. Reyna-Tapia,* 328 F.3d 1114, 1121 (9th Cir.2003) (*en banc*).

DATED this 8th day of November, 2011.

_____
Jacqueline Marshall
United States Magistrate Judge